Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff sues for the value of two steel-bottomed mud scows which were requisitioned by the defendant on March 15, 1945.
These two scows were a part of a fleet of eight that were built for plaintiff in 1925 at a cost of $32,233.68 per scow.
-It was found desirable to add improvements to each scow in the form of strengthened bulkheads in order to make it more efficient. The added cost was $2,750 per scow. Repairs were made on one of the scows in 1936, 1942, and 1943 in the amount of $7,181.24, and on the other in 1936 and 1941 in the sum of $4,626.12. The total cost of the two scows, including maintenance, was $83,774.72.
The scows were 112 feet long, the beam was 24 feet and the depth 12 feet. They are described in detail in finding 6.
On November 13,1948, the War Shipping Administration advised plaintiff that it had placed a valuation of $47,940 on the two vessels and offered payment in that amount. The plaintiff declined to accept this valuation, offered to accept $35,955 under subsection (d) of Section 902 of the Merchant Marine Act of 1936, as amended, but reserved the right to sue for such further sums as it should regard as sufficient to make the total constitute just compensation. It asked for payment of the amount suggested. There was some correspondence, but no payment in any amount was ever made.
*307 The useful life of the scow is dependent upon its structural makeup, its use, and the care and maintenance given it.
The plaintiff owned and operated a plant for its harbor and river work. These scows were in continuous operation from about March 15 to December 1 of each year, being used for towing mud from the Schuylkill River to an impounding base or dumping ground, a hauling distance of some 20 or 25 miles for the round trip. After each year’s use they were thoroughly cleaned, repaired, and painted and stored in plaintiff’s basin. They were overhauled at approximately three-year periods and were kept in good condition.
The opinions of the two experts, the one for the plaintiff and the other for defendant, differ widely in their estimates of value as experts are wont to do. Why this should be has always been a mystery. They have special knowledge not available to an ordinary layman. They also have wide latitude in expressing their opinions. Yet we are required to compose their differences and arrive at a just conclusion. One of these experts places the value of the scows at the time ■of taking at $60,000 each, the period of their useful life as being almost endless, and the depreciation as less than 1 percent per year. The other places the value of the same scows at $16,200 each, and their useful life as 30 years.
Practically the same issues as are involved here were present in the case of American Dredging Company v. United States, 120 C. Cls. 243. We will not repeat the reasoning here.
There is little market for scows of this type at any time. Usually they are built specially for persons desiring them. There were so few sales during or near the period involved here that it is impossible to find any market value; in fact it is apparent that none existed.
In accordance with the principles laid down by the Supreme Court and in accord with the usual practice of this court, we find the fair and reasonable value of the two scows at the time of the taking to be $35,000 each, or a total of $70,000. Cors v. United States, 337 U. S. 325; Wilson Line, Inc., v. United States, 111 C. Cls. 764; Baltimore Steam Packet Co. v. United States, 112 C. Cls. 433.
*308 The plaintiff is entitled to recover the sum of $70,000, plus, as a part of just compensation, interest thereon at 4 percent per annum from March 15,1945, until paid.
It is so ordered.
Howell, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.